**The court incorporates by reference in this paragraph and adopts as the findings and orders of this court the document set forth below. This document has been entered electronically in the record of the United States Bankruptcy Court for the Northern District of Ohio.**



Mary Ann Whipple
United States Bankruptcy Judge

UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| In Re: | ) | Case No. 08-30646 |
| | ) | |
| Daniel Langfitt Leidheiser, | ) | Chapter 7 |
| | ) | |
| Debtor. | ) | |
| | ) | JUDGE MARY ANN WHIPPLE |

### ORDER REGARDING OBJECTION TO PROOF OF CLAIM

This case is before the court on the Chapter 7 Trustee's objection to proof of claim # 12 filed by creditor Sharon L. Palacios ("Objection") [Doc. # 56] and Ms. Palacios's response [Doc. # 70]. The Trustee and Ms. Palacios, proceeding pro se, attended a hearing on the Objection in person.

The district court has jurisdiction over this Chapter 7 case pursuant to 28 U.S.C. § 1334(a) as a case under Title 11. It has been referred to this court by the district court under its general order of reference. 28 U.S.C. § 157(a); General Order 84-1 of the United States District Court for the Northern District of Ohio. Proceedings involving allowance or disallowance of claims are core proceedings that the court may hear and decide. 28 U.S.C. § 157(b)(1) and (b)(2)(B).

In her proof of claim, Ms. Palacios asserts an unsecured claim of $250,000 based on her dealings with Debtor in connection with a certain home improvement contract. She had brought an action in state court that was stayed when Debtor filed for Chapter 7 relief shortly before the date the case was scheduled for trial. Ms. Palacios's multi-count complaint had been pared down in state court to one remaining claim for trial – a claim that Debtor had violated the Ohio Consumer Sales Practices Act ("CSPA"), Ohio Revised

Code §§ 1345.01 *et seq.* Ms. Palacios contends that Debtor violated the CSPA by failing to complete the home improvements in a workmanlike manner, failing to comply with all building codes and standards, and by warranting his work but leaving her home "barely habitable."

The Trustee does not dispute Debtor's liability under the CSPA but, because the claim is unliquidated, asks the court to determine the proper amount of the claim. The parties agree that such estimation may be made based on the documents before the court.

Documentation attached to both the proof of claim and Ms. Palacios's response to the Trustee's Objection shows that, in May 2003, Ms. Palacios and her husband entered into a contract with Debtor, agreeing to pay him $165,628 for the completion of certain home improvements. The original contract was modified by several change order forms for additional work in the amount of $8,851.78, $2,730.00, $1,277.92, and $2,720.00, and by one change order form that resulted in a credit of $255.67. The total amount due Debtor had all of the work been completed was $180,952.03. [*See* Doc. # 70, Response, Exs. 5-8; Proof of Claim, Part 4, unnumbered pp. 1-10]. The parties agreed that disbursements would be paid in four draws, with the final draw to be paid upon completion of the work. [Doc. # 70, Response, Ex. 7]. During the course of construction, the Palacios paid Debtor a total of $134,301.78, leaving $46,650.25 to be paid on completion of the work.[1] However, Debtor did not complete the work, as documented by Ms. Palacios, [*see id.*, Ex. 4], and left the job with multiple violations existing of the Ottawa County building code, [*id.* Ex. 13].

The Palacios obtained an estimate for the completion of their home renovations in the amount of $101,386. [*Id.* Ex. 14]. The estimate indicates that the cost of $3,240.00 to reinstall decking after a new roof is installed is not included in the amount quoted, nor is the cost included for necessary repairs to the "EFS/Drivit stucco." The record is silent as to the cost for the stucco repairs.

## LAW AND ANALYSIS

The Bankruptcy Code provides that "[t]here shall be estimated for purpose of allowance under [§ 502] – (1) any contingent or unliquidated claim, the fixing or liquidation of which, as the case may be, would unduly delay the administration of the case." 11 U.S.C. § 502(c). As liability is not contested with respect to Ms. Palacios's claim, the court agrees that the claim should be estimated in accordance with § 502(c).

---

[1] According to Ms. Palacios, this amount included three $40,000 draws plus payment of three of the four change orders totaling $14,301.78. [Doc. # 70, Response, p. 2]. The Trustee does not dispute these payments. The amount to be paid on completion of the work includes one change order in the amount of $1,277.92. [*See* Proof of Claim, Part 3, unnumbered p. 9].

2

A consumer's remedy under the Ohio CSPA is governed by Ohio Revised Code § 1345.09. Under that section, a consumer may recover "three times the amount of the consumer's actual economic damages or two hundred dollars, whichever is greater, plus an amount not exceeding five thousand dollars in noneconomic damages" when the violation was either (1) an act or practice declared to be deceptive or unconscionable by rule, or (2) an act or practice previously determined by an Ohio court to violate section 1345.02, 1345.03, or 1345.031 of the Ohio Revised Code "and committed after the decision containing the determination has been made available for public inspection under [section 1345.05(A)(3)[2]]." Ohio Rev. Code § 1345.09(B).

In this case, the Trustee does not dispute that Debtor violated the CSPA by failing to complete the home improvements in a workmanlike manner, failing to comply with all building codes and standards, and by warranting his work but leaving her home "barely habitable." Before Debtor engaged in these acts, Ohio courts had determined that a supplier's practice of failing to perform home improvement services in a workmanlike manner and failing to correct any substandard work or defect is unfair and deceptive in violation of Ohio Revised Code § 1345.02. *See, e.g., Lockard v. Kno-Ho-Co Comm. Action Comm'n*, Case No. 92-CA-21, 1993 WL 385359, at *4-5, 1993 Ohio App. LEXIS 4503, at *11-14 (Ohio App. Sept. 20, 1993); *Jim Walter Homes Inc. v. Perdue*, Case No. 92 FR 182, 1994 WL 906687, at *2-3, 5 (Ohio C.P. May 18, 1994). At least one Ohio court had also determined that a supplier who represents that his work is guaranteed and then fails to correct services performed in a shoddy, unworkmanlike manner commits an unconscionable act in violation of Ohio Revised Code § 1345.03. *See Fisher v. Kennedy*, Case No.CV94-10-1652, 1995 WL 907588, at *1 (Ohio C.P. June 14, 1995). Each of the above cases were made available for public inspection by the Ohio Attorney General in accordance with Ohio Revised Code § 1345.09(B) before the date of Debtor's acts that form the basis of Ms. Palacios's claim. *See* http://www.opif.ag.state.oh.us/secured/Search.aspx and Public Inspection File ("PIF") Nos. 10001559, 10001515, & 10001510. The court concludes, therefore, that in estimating Ms. Palacios's claim, her actual economic damages should be trebled.

---

[2] Ohio Revised Code § 1345.05(A)(3) provides that the attorney general shall:

> Make available for public inspection all rules and all other written statements of policy or interpretations adopted or used by the attorney general in the discharge of the attorney general's functions, together with all judgments, including supporting opinions, by courts of this state that determine the rights of the parties and concerning which appellate remedies have been exhausted, or lost by the expiration of the time for appeal, determining that specific acts or practices violate section 1345.02, 1345.03, or 1345.031 of the Revised Code. . . .

3

Ms. Palacios's economic damages consist of the difference between what she had agreed to pay Debtor for the home improvements, $180,952.03, and the amount she must now pay in order to complete the improvements in compliance with all building codes and in a workmanlike manner. She has already paid Debtor $134,301.78. Based on the bid submitted to complete the work set forth in exhibit 14, the court estimates that the Palacios's cost to complete the home improvements is $104,586.00 ($101,386.00 per bid amount + 3,200 to reinstall decking).[3] The total cost to complete the home improvement project is, therefore, $238,887.78 ($134,301.78 + $104,586.00). The difference between this cost ($238,887.78) and the original agreement with Debtor ($180,952.03) is $57,935.75, which amount the court estimates to be Ms. Palacios's actual economic damages caused by Debtor's violation of the CSPA. In other words, she will end up paying $238,887.78 for a project that should have cost her $180,952.03, with the difference the actual economic damages sustained by Ms. Palacios. No non-economic damages have been claimed or relied upon in support of her proof of claim. As she is entitled to treble damages, the court estimates her claim at $173,807.25 for purposes of the claims allowance process under § 502(c).

**THEREFORE,** for the foregoing reasons, good cause appearing,

**IT IS ORDERED** that the Trustee's Objection to Claim [Doc. # 56] be, and hereby is, **SUSTAINED**; and

**IT IS FURTHER ORDERED** that Ms. Palacios's Proof of Claim # 12 shall be allowed in the amount of $173,807.25.

---

[3] Although the submitted bid indicates that certain stucco repairs are also necessary, [*see* Doc. 70, Ex. 14, p.2], the record is silent, and the court will not speculate, regarding the cost for such repairs.